IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JARRITT R. FORD, | ) | CASE NO. 5:11CV575 |
| | ) | |
| Plaintiff, | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| DREW ALEXANDER, et al., | ) | |
| | ) | |
| Defendants. | ) | **REPORT AND RECOMMENDATION** |

Plaintiff Jarritt R. Ford ("Ford"), who is proceeding pro se, filed this action against Summit County, Ohio ("Summit County") and Drew Alexander, the Sheriff of Summit County (collectively "County Defendants"), seeking damages for injuries inflicted on him by another inmate, John Cook, during a fight that occurred while both men were imprisoned in the Summit County jail.[1]   Ford has asserted claims against the County Defendants under 42 U.S.C. § 1983 and under the Ohio Revised Code.  Docs. 1 and 5.

The case is currently before the Court on the Motion for Summary Judgment filed by Ford (Doc. 28) and the Cross-Motion for Summary Judgment filed by the County Defendants. Doc. 42.  Both Motions, having been fully briefed,[2] are ripe for Report and Recommendation. For the reasons set forth below, the undersigned RECOMMENDS that: (1) Ford's motion for summary judgment be DENIED, (2) the County Defendants' motion for summary judgment be GRANTED, (3) Ford's claims against the unnamed John and Jane Doe Defendants be dismissed without prejudice, and (4) Ford's remaining state law claims be dismissed without prejudice.

---

[1] In his Amended Complaint Ford added Cook as a defendant in this action.  Ford has failed to obtain service on Cook and Cook has not entered an appearance in this case.

[2] The briefing includes supplemental briefs filed by the parties on January 30, 2013, pursuant to Court order.

# I.  Background

**A.     Procedural History**

**1.        Plaintiff's Complaint and Claims**

On March 21, 2011, Ford filed his original Complaint.  Doc. 1.  On July 27, 2011, Ford filed an Amended Complaint, in which he added to the claims in the original Complaint by adding Cook as a defendant and by asserting assault and battery claims against Cook as well as an additional claim against the County Defendants.  Doc. 5.[3]  Ford filed a second Amended Complaint on September 12, 2011, which appears to be duplicative of the Amended Complaint filed on July 27, 2011.  Doc. 9.  Based on these documents, it appears that Ford is asserting the following claims:

1.  Failure to train and failure to supervise against Defendant Alexander (Claim One of the original Complaint);

2.  Failure to protect against Summit County based on the failure of the County to maintain adequate policies and practices (Claim Two of the original Complaint);

3.  Dereliction of duty in violation of Ohio Rev. Code § 2921.44.  (Claim Three of the original Complaint);

4.  State law claims of assault and battery against Defendant Cook (Claim Four in Amended Complaint);

5.  Violation of Ford's 8th Amendment rights against the County Defendants due to a failure to protect (Claim Five in Amended Complaint);

---

[3] Ford also added "John and Jane Doe Defendants" to the caption of his Amended Complaint.  Doc. 5, pp. 1 and 2.  However, the Amended Complaint makes no specific allegations against those defendants and Ford has made no attempt to identify them or serve them with process.  On August 3, 2011, the Court ordered Ford to file a second amended complaint and to specifically describe the roles of the Doe defendants.  Doc. 7.  The Court instructed Ford to "tell the Court what John and Jane Doe allegedly did to cause Plaintiff Ford to add them to the Complaint."  Doc. 7, p. 1.  Ford filed his second Amended Complaint on September 12, 2011, but again failed to describe the roles of the "John and Jane Doe" defendants.  The time to amend parties and the time to obtain service under the Federal Rules of Civil Procedure have expired.  Accordingly, the Court should dismiss the unnamed Doe defendants from this action. *See Pruitt v. Lewis*, No. 06–2867, 2007 WL 4293037 (W.D. Tenn. Dec. 6, 2007) (dismissing claims against unnamed defendants where the discovery deadline had passed and the plaintiff failed to use the discovery process to determine the names of the unidentified defendants).

      6.  Reckless disregard of a known condition under the Ohio Negligence Statute
         (Claim Five in Amended Complaint).

Doc. 1, at pp. 6-8; Doc. 5, at pp. 2-3.

    **2.**      **The Cross-Motions for Summary Judgment**

Ford and the County Defendants filed Cross-Motions for Summary Judgment on July 13,

2012, and August 31, 2012, respectively.  Docs. 28 and 42.  Ford's Motion seeks summary

judgment on his claims against the County Defendants.  Ford's Motion is confusing at best. He

simply restates the allegations in his complaint, recites what was admitted and denied in the

County Defendants' Answer, and then recites disjointed quotes from various cases.  Doc. 28.

Ford then concludes that there is no genuine issue of material fact with regard to his Section

1983 claims alleging failure to protect, failure to train and supervise, and failure to maintain

adequate policies and practices, and that he is entitled to summary judgment on those claims.

However, Ford never discusses the elements of each of his Section 1983 claims, never explains

how any evidence actually establishes a deprivation of his constitutional rights by the County

Defendants, never applies the law set forth in the cases he cites to his claims, and fails otherwise

to explain why he is entitled to summary judgment.  As an independent ground for his Motion,

Ford argues that he is entitled to judgment as a sanction for the County Defendants' failure to

produce in discovery a document in which, according to the County Defendants, Ford waived

criminal prosecution against Cook.

    As documentary support for his Motion, Ford submitted copies of the following:  an

Incident Report prepared by Sheriff's Deputy John Burley ("Burley Report") dated June 1, 2010,

the day of the fight; a Sheriff's Department shift Staffing Guidelines and Assignment Worksheet

dated June 1, 2010; medical records; Ford's witness statement dated June 4, 2010; photos of the

broken broom handle, Ford's injuries, and Ford's cell; and a copy of a portion of an undated

news story.[4]  While Ford has not authenticated these documents, the County Defendants have

authenticated some of them and have not disputed the authenticity of some others.[5]  Neither

Ford nor the County Defendants have submitted any deposition transcripts in support of their

Cross-Motions.[6]

The County Defendants' Motion seeks summary judgment in their favor on Ford's

claims, asserting that Defendant Sheriff Alexander is entitled to qualified immunity and that

Ford's individual capacity claim against Sheriff Alexander is without merit; that Ford's

municipal liability claims (policy and practice claim and failure to train/supervise claim) are

without merit because Ford cannot satisfy the prerequisites for municipal liability under *Monell*

*v. Dep't of Soc. Servs.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); and that Ford's

claims are barred due to his failure to exhaust administrative remedies.  In support of their

Motion, the County Defendants submitted copies of the following documents: Ford's witness

statement dated June 4, 2010 (Doc. 42, Exhibit 1); an Affidavit of Sheriff's Administrative

Lieutenant John C. Grogan dated August 16, 2012, to which are attached copies of the Burley

Report and an Incident Report dated June 5, 2010, prepared by Deputy Earl C. Iselin ("Iselin

Report") (Doc. 42, Exhibit 2); an Affidavit of Defendant Sheriff Drew Alexander dated August

22, 2012 (Doc. 42, Exhibit 3); and a second Affidavit of Lieutenant John C. Grogan dated

August 2, 2012. Doc. 42, Exhibit 4.

---

[4] Ford cites the undated partial news story in his Supplemental Brief.  Doc. 66, at p. 3.  The news story excerpt has
no evidentiary value and Ford's use of it is misleading in any event.  Therefore, it has not been considered in this
Report and Recommendation.

[5] The County Defendants have authenticated the Burley Report. Doc. 42, Exhibit 2A, at p. 3.  The County
Defendants have also submitted a copy of Ford's witness statement in support of their Motion for Summary
Judgment.  Doc. 42, Exhibit 1.  The County Defendants have not disputed the authenticity of the June 1, 2010, shift
Staffing Guidelines and Assignment Worksheet, the medical records, or the photographs.

[6]  The parties have not taken any depositions.  Ford does include in his Motion, his Reply Brief, and his Opposition
to the to the County Defendants' Motion declarations pursuant to 28 U.S.C. § 1746.  Doc. 28, at p. 12; Doc. 34, at p.
3; Doc. 50, at p. 1.

### 3.    Proceedings on the Motions

On November 6, 2012, the undersigned issued a Report and Recommendation, recommending that Ford's motion for summary judgment be denied, that Defendants' motion for summary judgment be granted, and that Ford's federal claims be dismissed under the Prison Litigation Reform Act of 1995, 42 U.S.C. § 1997e(a), without prejudice due to Ford's failure to exhaust administrative remedies.  Doc. 51.  Ford objected to the Report and Recommendation. Doc. 57.  On January 4, 2013, the Court adopted in part and rejected in part the Report and Recommendation.  Doc. 60.  In short, the Court found that a genuine issue of material fact exists as to whether administrative remedies were available to Ford and, as a result, the case should not be dismissed for failure to exhaust administrative remedies.  Doc. 60.  The Court returned the matter to the undersigned to consider the merits of the remaining issues raised in the cross-motions for summary judgment.  Doc. 60.

### B.    Facts[7]

### 1.    Undisputed facts

The following facts are undisputed:

On May 27, 2010, Ford pled guilty to felonious assault and discharging a firearm on or near a prohibited premises, and was sentenced to prison.  He was confined at the Summit County Jail pending transfer to the Lorain Correctional Institution.  Doc. 1, at ¶ 10.  Ford and Cook were housed in separate cells on Pod 4A of the Summit County Jail.  Doc. 1, at ¶¶ 12, 14.  On June 1, 2010, Ford was involved in a fight with Cook.  During the fight Cook beat Ford with a broom handle, injuring Ford severely enough that he was hospitalized for two days.  Doc. 1, at ¶¶ 13-16, 19-20.

---

[7] Ford's Motion for Summary Judgment incorporates by reference the Statement of Facts set forth in Paragraphs 10 through 26 of his Complaint.  Doc. 28, at p. 1.  Accordingly, those Paragraphs (Doc. 1, ¶¶ 10-26) are referred to herein.

Before the fight began, a sheriff's deputy had advised Cook that he was being transferred to segregation as punishment for possessing contraband (a cigarette lighter), which had been found during a search of Cook's belongings earlier in the day.  Doc. 1, at ¶ 11.  After the deputy informed Cook he was being moved to segregation, the deputy left the housing unit without escorting Cook to segregation.  Doc. 1, at  ¶ 11.  Some time later and immediately before the fight, Ford entered Cook's cell.  Doc. 1, at ¶ 12.  After Ford entered Cook's cell, Cook confronted Ford as to who had "snitched" on Cook.  Doc. 1, at ¶ 12.  Ford denied having snitched on Cook.  Doc. 1, at ¶ 12.  Thereafter, the altercation turned physical and, at some point, Cook obtained the broom handle and beat Ford with it.  Doc. 1, at 15.

Notably, Ford does not allege, nor is there any evidence, that Ford in fact "snitched" on Cook, i.e., informed any jail official that Cook had a cigarette lighter.  Ford also does not allege that he had any knowledge before Cook called him into his cell that Cook had a grievance against him.  Nor does Ford allege that he ever informed jail officials before the fight that Cook might be a danger to him.

The jail staff was alerted to the fight in response to an inmate distress call from Ford, who pressed a call button located in his cell after the fight had stopped.  Doc. 1, at 17; Doc 42, Exhibit 2B, Iselin Report, at p.1.  Upon being alerted to Ford's condition, jail officials called for medical assistance and Ford was transported to Akron General Medical Center for evaluation and treatment for several injuries, including multiple head wounds.  Doc. 1, at 18; Doc. 42, Ex. 2B, at p. 2.  He spent two days in the hospital and was then returned to the Summit County Jail, where he was held for seven more days while awaiting transport to the Lorain Correctional Institution.  Doc. 1, at ¶ 20.  Both Ford and Cook were disciplined for the fight.  Doc 42, Exhibit 2B, Iselin Report, at p.3. Ford was transferred to the Lorain Correctional Institute on June 11, 2010.  Doc. 1, at ¶ 23.

6

2.      **Disputed Facts**

The parties disagree as to a number of facts that are not material to the disposition of the

Cross-Motions for Summary Judgment.  Specifically, the parties appear to disagree as to:

whether a verbal altercation occurred before Ford entered Cook's cell, how the fight actually

played out, and whether it was Ford or Cook who introduced the broom handle.  Ford's

Complaint does not describe any verbal altercation before he entered Cook's cell whereas the

Iselin Report states that Ford began to argue with Cook in the dayroom of Pod 4A, that Cook

went upstairs to his cell, and that Ford followed Cook into Cook's cell.  Doc. 42, Exhibit 2B,

Iselin Report, at p. 2.[8]  Ford's Complaint alleges that, after Cook confronted Ford in his cell and

Ford denied snitching, Cook became violent and grabbed Ford and started to assault him. Doc. 1,

at ¶ 13.  Ford alleges that he struggled to get back to his own cell and that, as he reached his cell,

Cook, who was chasing him, gained access to a broom handle and began to strike Ford with it,

beating him about his head.  Doc. 1, at ¶¶ 14-16.  Thus, Ford alleges that Cook introduced the

broom handle into the fight.[9]  The Iselin Report indicates, on the other hand, that it was Ford

who introduced the broom handle.  The report states that, after the fight started, both men

emerged from Cook's cell, at which time Cook was hitting Ford with his fists and demanding to

know if Ford had had enough.  *Id.*  When Ford said he had had enough, both men returned to

their respective cells.  *Id.*  According to the Iselin Report, Ford then unscrewed the handle from a

broom he had obtained earlier in the day to clean his cell and returned to Cook's cell to resume

the fight.  *Id.*  When both men again emerged from Cook's cell, Cook had taken the broom

handle from Ford and he hit Ford with it in the legs, head, and shoulder until the handle broke

---

[8] The Iselin Report concludes that Cook instigated the verbal altercation that preceded the fight by turning other
inmates against Ford for snitching on Cook.  Doc. 42-2, at p. 7.  In the witness statement Ford completed after the
fight, he stated that he went into Cook's cell because Cook wanted to "holler" at him about the disciplinary writeup
Cook had received and Cook "thought that I (Ford) told on him . . . ."  Doc. 42, Exhibit 1, Ford Witness Statement.

[9] *See also* Doc. 42, Exhibit 1, Ford Witness Statement.

and Ford fell to the ground.  *Id.*  Cook then retrieved the broom head Ford had removed and hit Ford with it several times.  *Id.*  Cook again demanded to know if Ford had had enough and, when Ford said he had, both men again returned to their cells.  *Id.*

The parties also disagree as to the time the fight started.  According to Ford's Complaint, the fight would have started sometime after 5:45 p.m. because that is when the Complaint alleges that a deputy informed Cook that he was being disciplined due to a lighter being found in his belongings.  Doc. 1, at ¶ 11.  The Iselin Report indicates that the fight began at approximately 5:25 p.m. and took place over a 12 to 15 minute time period total, which period included a break of unknown duration when Ford returned to his cell and got the broom handle.  Doc 42, Exhibit 2B, Iselin Report, at p. 1, 2.

### 3.  Supplemental Briefs

In an effort to obtain clarity regarding the facts and law, the undersigned, on January 16, 2013, ordered the parties to submit supplemental briefs and to support their factual assertions with evidence. The parties were directed to address specifically the facts and law with respect to whether the County Defendants either knew or should have known in advance of the fight that Cook might attack Ford.  Doc. 63.  Ford and the County Defendants filed supplemental briefs on January 30, 2013.  Docs. 66 and 67.

In his Supplemental Brief, Ford clarifies the bases for his failure to protect claim against the County Defendants.  He does not assert that his claim is based on his actually having snitched on Cook or on the County Defendants having prior knowledge of any specific animosity between Ford and Cook.[10]  Doc. 66.  Rather, Ford contends the County Defendants were deliberately

---

[10] Ford's Supplemental Brief cites to the Iselin Report, which states that Cook admitted, in an investigative interview <u>after</u> the fight, to accusing Ford of "dry snitching" on him.  Doc. 66, at p. 2 (citing Iselin Report, Doc 42, Exhibit 2B, Iselin Report, at p.1).  The Iselin Report does not establish that the County Defendants had any knowledge <u>before</u> the fight that Cook might attack Ford.

indifferent to his safety because they placed Cook, whom Ford alleges was a violent and

mentally disturbed prisoner, in the same dorm, i.e., pod unit of the jail, as other prisoners,

including Ford.  Doc. 66, at p. 1.  Ford states that the County Defendants failed to protect him

against physical harm at the hands of another with respect to:  (a) Providing security; (b) timely

responding so as to prevent the assault by Cook; and (c) creating a condition that directly caused

harm, i.e., housing Cook in a pod with other inmates.  Doc. 66, at p. 2.

   The County Defendants, in their Supplemental Brief, improperly quoted and attached

portions of a transcript of a telephone conference the Court held with the parties on January 16,

2013.  The Court had expressly scheduled the telephone conference to follow up on and continue

settlement discussions begun at an in-person status conference on January 11, 2013.  The

undersigned had specifically explained to the parties that statements made during the parties'

settlement discussions could not be used as evidence in the case pursuant to Rule 408 of the

Federal Rules of Evidence.   By order dated January 31, 2013, the undersigned ordered stricken

the transcript attached to the County Defendants' Supplemental Brief and all references in the

Brief to statements made by Ford during the January 16, 2013, telephone conference.  Doc. 68.

The stricken portions of the County Defendants' Supplemental Brief and the attached transcript

have been given no consideration herein.

## II. Summary Judgment Standard

   Summary judgment is proper "if the pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits, if any, show that there is no genuine issue as

to any material fact and the moving party is entitled to judgment as a matter of law."

Fed.R.Civ.P. 56(c).  "A genuine issue of material fact exists when[,] 'there is sufficient evidence

favoring the nonmoving party for a jury to return a verdict for that party.'"  *White v. Wyndham*

*Vacation Ownership, Inc.,* 617 F.3d 472, 475–76 (6th Cir. 2010) (quoting *Anderson v. Liberty*

*Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).  The moving party

bears the burden of demonstrating that no material facts are in dispute, and the evidence

submitted must be viewed in the light most favorable to the nonmoving party.  *Adickes v. S.H.*

*Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

After a moving party has carried its initial burden of showing that no genuine issues of

material fact remain in dispute, the burden shifts to the non-moving party to present specific facts

demonstrating a genuine issue for trial.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475

U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).  "The 'mere possibility' of a factual

dispute is not enough."  *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992) (citing

*Gregg v. Allen–Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)).  In order to defeat the motion

for summary judgment, the non-moving party must present probative evidence that supports its

complaint.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d

202 (1986). The non-moving party's evidence "is to be believed, and all justifiable inferences are

to be drawn in his favor."  *Id.* at 255.  "If the evidence is merely colorable, or is not significantly

probative, summary judgment may be granted."  *Id.* at 249-50 (internal citations omitted).

In this case, the parties have filed Cross-Motions for Summary Judgment.  Docs. 28, 42.

"The filing of cross motions for summary judgment does not necessarily mean that the parties

consent to resolution of the case on the existing record or that the district court is free to treat the

case as submitted for final resolution on a stipulated record."  *Taft Broad. Co. v. United States,*

929 F.2d 240, 248 (6th Cir. 1991) (citations omitted).  The standard of review for cross motions

for summary judgment does not differ from the standard applied when a motion is filed by only

one party to the litigation.  *Id.*  The court "must evaluate each party's motion on its own merits

and may not grant summary judgment in favor of either party . . . if disputes remain as to

material fact."  *Id.*

Lastly, it should be noted that Ford is proceeding pro se.  Although not excused from complying with the Federal Rules of Civil Procedure, "[a] pro se litigant's pleadings and evidence presented must be, and in this instance are, construed liberally."  *Anderson v. Frye*, 2007 WL 912290, *6 (S.D. Ohio Mar.22, 2007).

## III.  Analysis

**A.      Section 1983**

Ford asserts claims against the County Defendants pursuant to Section 1983, alleging a failure to protect, failure to train and supervise, and failure to maintain adequate policies and practices.  Section 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.  Section 1983 itself creates no substantive rights, but merely provides a mechanism for aggrieved persons to obtain a remedy for deprivations of rights established elsewhere.  *See, e.g., Gonzago University v. Doe*, 536 U.S. 273, 285, 122 S.Ct. 2268, 153 L.Ed.2d 309 (2002).  To prevail on a Section 1983 claim, a plaintiff must demonstrate (1) the deprivation of a right secured by the Constitution or laws of the United States and (2) that a person acting under the color of state law caused the deprivation.  *See, e.g., Dominguez v. Corr. Med. Servs*., 555 F.3d 543, 549 (6th Cir. 2009).  "If a plaintiff fails to make a showing on any essential element of a § 1983 claim, it must fail."  *Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001).

**B.      Analysis of Cross-Motions for Summary Judgment**

To prevail on his Motion for Summary Judgment or defeat the County Defendants'

Cross-Motion, Ford must provide evidence to support the elements of his claims against Sheriff

Alexander and Summit County.  Ford has not done so.

While not entirely clear, it is assumed that Ford intended to name Sheriff Alexander in

both his individual and official capacities.  Claims against a local government official in his

official capacity are treated as claims against the local government entity itself.  Therefore,

Ford's naming Sheriff Alexander in his official capacity as part of his claims under Section 1983

is the equivalent of naming Summit County.  _Shorts v. Bartholomew,_ 255 Fed. App'x. 46, 57

(6th Cir. 2007) (holding that claims against local government officials in the official capacity

should be treated as claims against the local government) (citing _Hafer v. Melo,_ 502 U.S. 21, 25,

112 S.Ct. 358, 116 L.Ed.2d 301 (1991)); _see also Monell v. Dep't of Soc. Servs.,_ 436 U.S. 658,

691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).  Accordingly, only Ford's claims against Sheriff

Alexander in his individual capacity and Summit County are at issue on the cross-motions for

summary judgment.

**1.      Sheriff Alexander**

Ford asserts that Sheriff Alexander violated his Eight Amendment right to be free from

cruel and unusual punishment by failing to protect him from an attack by another inmate.[11]  Doc.

1, pp. 5-6; Doc. 5, at p. 3.  In his supplemental brief, Ford attempts to clarify this claim and

alleges that Sherriff Alexander failed to protect him against physical harm at the hand of another

with respect to (1) providing security, (2) timely responding to an emergency to prevent an attack

by another, and (3) creating a condition that caused a risk of harm.  In reply, Sheriff Alexander

---

[11] Ford also asserts claims against Sheriff Alexander under Section 1983 alleging failure to train and supervise and failure to maintain adequate policies and practices.  These claims are official capacity claims and will be addressed below in the section on Official Capacity Claims/Municipal Liability.

argues that Ford cannot prove deliberate indifference to any threat to his safety and, thus, cannot meet his burden under Section 1983 of proving that Sheriff Alexander violated his constitutional rights.  In addition, to the extent that Ford is asserting a claim against Sheriff Alexander in his individual capacity, Sheriff Alexander asserts the defense of qualified immunity.

It is well settled that prison officials have a duty under the Eighth Amendment to "take reasonable measures to guarantee the safety of inmates."  *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (internal quotations omitted).  Reasonable measures must be taken "to protect prisoners from violence at the hands of other prisoners."  *Id.* at 833. However, prison officials do not violate a prisoner's rights under the Eighth Amendment every time one prisoner inflicts injury on another.  *Id.* at 834.  A prisoner can show a violation of the Eighth Amendment if he proves both an objective and a subjective component of a "failure to protect" claim.  *Id.*

To satisfy the objective component, the inmate must show that the failure to protect him from risk of harm is objectively "sufficiently serious."  *Id.* at 828.  In particular, the inmate must show that "he is incarcerated under conditions posing a substantial risk of serious harm."  *Id; see also Hudson v. McMillian*, 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992) (explaining the objective component requires a determination of whether "the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation"); *Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001).

To satisfy the subjective component, the inmate must establish that prison officials acted with "deliberate indifference" to his health or safety.  *Bishop v. Hackel*, 636 F.3d 757, 766 (6th Cir. 2011) (citing *Farmer*, 511 U.S. at 837).  "An official is 'deliberately indifferent' if he or she 'knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of harm exists,

and he must also draw the inference.'" *Id.* (quoting *Farmer*, 511 U.S. at 837). "A prison official who was unaware of a substantial risk of harm to an inmate may not be held liable under the Eighth Amendment even if the risk was obvious and a reasonable prison official would have noticed it." *Bishop*, 636 F.3d at 767; *see also Garretson v. City of Madison Heights*, 407 F.3d 789, 797 (6th Cir. 2005) (noting that "[t]he subjective component must be addressed for each officer individually").[12]

The deliberate indifference standard set out in *Farmer* is a high one.  *See, e.g., Beers–Capitol v. Whetzel*, 256 F.3d 120, 137 (3d Cir. 2001). The Sixth Circuit has described deliberate indifference as a state of mind akin to criminal recklessness.  *Hamilton v. Eleby*, 341 Fed.App'x. 168, 171 (6th Cir. 2009) (internal citations and quotations).  A negligent failure to prevent an attack is insufficient to establish a violation of the Eighth Amendment.  *Davidson v. Cannon*, 474 U.S. 344, 345–48, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986) (finding that prison officials' negligent failure to heed prisoner's notification of threats from another inmate, followed by an assault, is not a deprivation of constitutional rights); *see also Schwartz v. County of Montgomery*, 843 F.Supp. 962 (E.D. Pa.), *aff'd*, 37 F.3d 1488 (3d Cir. 1994) (stating that corrections officers' failure to observe institutional policies regarding the supervision of dangerous inmates constitutes negligence, which cannot support a Section 1983 action for violation of the Eighth or Fourteenth Amendments).

Further, courts have noted that jails and prisons are dangerous places and "threats between inmates are common and do not, under all circumstances, serve to impute actual

---

[12] Prison officials may avoid liability for deliberate indifference claims in several ways. As noted by the Supreme Court, they "might show, for example, that they did not know of the underlying facts indicating a sufficiently substantial danger and that they were therefore unaware of a danger, or that they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." *Farmer*, 511 U.S. at 844.  "In addition, prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* "Whether one puts it in terms of duty or deliberate indifference, prison officials who act reasonably cannot be found liable" on a failure-to-protect claim. *Id.* at 845.

knowledge of a substantial risk of harm." *Jackson v. Everett*, 140 F.3d 1149, 1152 (8th Cir. 1998) (quoting *Prater v. Dahm*, 89 F .3d 538, 541 (8th Cir. 1996).  To support an Eighth Amendment claim, the risk of harm must go above and beyond that encountered when any group of inmates are left unsupervised for any amount of time.  *See Burnley v. Evans*, 2007 WL 2874037, 249 Fed. App'x. 492, 494 (8th Cir. 2007) (citing *Andrews v. Siegel*, 929 F.2d 1326, 1330–31 (8th Cir. 1991) ("some violence in prisons may be unavoidable due to the character of the prisoners")).

In an analogous case, *Hale v. Torbert*, No. 93 C 4450, 1995 WL 584332 (N.D. Ill. Oct. 2, 1995), the court determined that the plaintiff failed to satisfy the subjective component of his failure to protect claim because he failed to establish that the defendants actually knew that a substantial risk of harm to the plaintiff existed.  The plaintiff brought a Section 1983 action against various corrections officers, alleging that their failure to protect him from two assaults by his cellmate cell violated his Eighth Amendment rights.  With regard to the first assault, the court noted that the defendants had no actual knowledge that the fight was about to occur.  Indeed, the plaintiff never alleged that the defendants had knowledge of any prior attacks by the plaintiff's cellmate or any other reason why they should have anticipated that the plaintiff would be attacked by his cellmate.  The court concluded that the defendants could not have been deliberately indifferent to that of which they had no actual knowledge.  *Id.* at *4.  The district court therefore granted summary judgment in favor of the defendants.  *Id.*

Similarly, in *Francisco v. Hebert*, No. 05–1850, 2007 WL 1805772 (W.D. La. June 21, 2007), the court determined, *inter alia*, that plaintiff failed to satisfy the subjective component of a failure to protect claim.  The plaintiff's claims arose out of an incident in which he was beaten with a padlock by another inmate while he was in custody at the Iberia Parish Jail.  The defendant moved for summary judgment on plaintiff's federal claims, arguing that the plaintiff

could not prove deliberate indifference to any threat to his safety.  There was no evidence that the defendant was actually aware of any problems between the plaintiff and the inmate who attacked him until the initial assault occurred.  *Id.* at *9.  In addition, there was no evidence that defendant or any other jail official were actually aware of facts from which the inference could be drawn that a substantial risk of harm to the plaintiff existed.  The court therefore granted summary judgment in favor of the defendant because the plaintiff failed to establish that the defendant was deliberately indifferent to a serious risk of harm to the plaintiff.  *Id.* (citing Farmer, 511 U.S. at 844).

In this case, Sheriff Alexander does not deny that the injuries Ford received in the attack by Cook constitute a serious harm. However, Sheriff Alexander does argue that Ford offered no evidence to satisfy the subjective prong of the test for failure to protect claims.  There is no evidence that Sheriff Alexander acted with the requisite deliberate indifference for a valid Eighth Amendment claim.  Ford does not allege that Sheriff Alexander was present for, or personally involved in, the alleged failure to protect him from Cook.  In addition, Ford has not alleged, and there is no evidence that Sheriff Alexander was, in any way, personally aware of a risk of harm to Ford at the hands of Cook.  To the contrary, Sheriff Alexander attests that he had no personal knowledge of either Ford or Cook prior to the fight. Doc. 42, Exhibit 3, Alexander Affidavit, at ¶ 6.  He states that, on the date of the incident, he had no personal involvement in the operation of the dorm (pod) where the fight occurred.  *Id.* at ¶ 7.  He also affirms that, at no time did he have actual knowledge that "Ford feared for his safety vis-à-vis Cook" or that Ford would be the target of an attack by Cook.  *Id.,* at ¶ 12.  Based on this evidence, which Ford has not refuted, Ford has failed to establish that Sheriff Alexander actually knew of a substantial risk of serious harm to Ford and failed to act to abate it.

16

Under a broad reading of the Complaint, it appears that Ford named Sheriff Alexander as a defendant in this matter because he was the sheriff of Summit County at the time of the incident and the Summit County Jail was within his area of responsibility. A supervisory official cannot be held liable pursuant to Section 1983 under a theory of respondeat superior simply because an employee or subordinate allegedly violated the plaintiff's constitutional rights. *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006). "A supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor 'either encouraged the specific incident of misconduct or in some other way directly participated in it.'" *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir.1999). "At a minimum a plaintiff must show that the [supervisor] at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Id.* Thus, to the extent that Ford alleges that Sheriff Alexander is liable merely because he was the county sheriff at the time of the incident, his claim is without merit.

Construing Ford's arguments liberally, it appears that he is suggesting that Sheriff Alexander may be held liable for failure to maintain jail policies to prevent inmate attacks. As set forth in his first and second sub-claims, Ford asserts that Sheriff Alexander failed to protect him because he failed to provide adequately security and failed to timely respond to the emergency to prevent the attack. However, in the absence of any evidence indicating "direct, active participation" in the misconduct alleged herein, Ford claims against Sheriff Alexander must fail. *Koch v. Cnty. of Franklin,* No. 2:08cv1127, 2010 WL 23686352, at *10–11 (S.D. Ohio June 10, 2010) ("a supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it") (internal citations and quotations omitted). There is absolutely no evidence that Sheriff Alexander had personal involvement in the operation of the

17

dorm (pod) where the fight occurred.  Doc. 42, Exhibit 3, Alexander Affidavit, at ¶¶ 4, 7.  There is also no evidence that Sheriff Alexander otherwise encouraged or condoned the assault.

Sheriff Alexander has submitted evidence establishing that the Summit County Jail had policies in place with regard to fights between inmates.  In his affidavit, he stated that "[i]t is the official policy of the Jail to break up known inmate fights at the earliest possible time, subject only to deputy safety concerns."  Doc. 42, Exhibit 3, Alexander Affidavit, at ¶ 8.  Sheriff Alexander also stated that "Jail personnel receive ongoing training on fight intervention, and are duty-bound to break up inmate fights that they are aware of."  *Id.* at ¶ 9.  Ford offers no evidence to show that these policies and procedures were a sham, or that they were so ineffective that the procedures themselves amount to deliberate indifference on the part of Sheriff Alexander.  He also offers no evidence to show that these policies were not followed in this case, or that Sheriff Alexander somehow encouraged or condoned jail officials to violate these policies.  There is simply no evidence to support Ford's apparent claim that Sheriff Alexander failed to maintain policies to prevent inmate attacks.

Liberally construing Ford's claims and allegations, it also appears that he may be contending that Sheriff Alexander should be held liable because there was no deputy present on Pod 4A at the time of the fight. Doc. 66, at p. 3.[13]  Ford suggests that the failure to staff and/or supervise the deputies for the pod reflected deliberate indifference on the part of Sheriff Alexander to Ford's safety because a deputy could have prevented or broken up the fight.  As repeatedly held by the Sixth Circuit:

> [A] failure of a supervisory official to supervise, control, or train the offending
> individual officers is not actionable absent a showing that the official either

---

[13] Ford cites the June 1, 2010, shift Staffing Guidelines and Assignment Worksheet.  Doc. 66, at pp. 3-4.  On that document, the name typed next to Pod 4A is crossed out.  Id., at p. 4.  Construing the document most liberally in Ford's favor, it appears to indicate that the deputy assigned to duty on Pod 4A was not in fact present for the shift in question.  Doc. 28-1, at p. 2.  The same document shows that Pod 4A was one of four sub-units comprising Housing Unit 4 and indicates that three deputies were on duty on other sub-units of Housing Unit 4 at the time in question.

encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers.

*Hays v. Jefferson County*, 668 F.2d 869, 874 (6th Cir. 1982); *Tate v. Coffee County, Tennessee*, 48 Fed. App'x. 176 (6th Cir. 2002).  If a plaintiff fails to allege that a named defendant was directly involved in the misconduct or that he "condoned, encouraged, or knowingly acquiesced in [that] alleged misconduct," his claims against the named defendant are subject to dismissal. *See McCallum v. Gilless*, 38 Fed. App'x. 213, 215 (6th Cir. 2002) (citing Ta*ylor v. Michigan Dep't of Corr.*, 69 F.3d 76, 80–81 (6th Cir. 1995); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993)).

There is absolutely no evidence that the Summit County Jail is inadequately staffed in general, or that it was inadequately staffed on the day that Ford was attacked by Cook.  In addition, Ford has failed to offer any evidence that would indicate that Sheriff Alexander was aware that there was no guard on duty in Ford's pod at the time of the attack.  There is also no evidence that Sheriff Alexander in any way condoned or acquiesced in the staffing of the pod at the time in question.  Furthermore, prison and jail administrators have discretion to make staffing decisions.  *See, e.g., Rhodes v. Chapman*, 452 U.S. 337, 349 n.14 (1981) (a prison's internal security is peculiarly a matter normally left to the discretion of prison administrators); *Bell v. Wolfish*, 441 U.S. 520, 551 (1979).  Absent any evidence to the contrary, the alleged failure of Sheriff Alexander to have a deputy on duty on Pod 4A on the shift in question was, at most, negligent.  The negligent failure of Sheriff Alexander to staff and supervise the pod cannot service as a basis of constitutional relief because negligence does not rise to the level of deliberate indifference actionable under the Eighth Amendment.  *See, e.g., Sullivan v. Graham*, No. 09–CV–1311, 2011 WL 4424355, at *8 (N.D.N.Y. Aug. 5, 2011) (negligent failing to staff

recreational yard at prison did not rise to the level of deliberate indifference under the Eighth Amendment); *Matthews v. Armitage*, 36 F.Supp.2d 121, 126 (N.D.N.Y. 1999) (finding that additional precautions might have prevented stabbing, but the failure to institute such precautions at most constituted negligence.").

Finally, Ford suggests that Sheriff Alexander should be held liable because he created a condition that directly caused Ford harm.  Ford asserts that Sheriff Alexander should have known that Cook was a danger to Ford.  However, there is no evidence that Sheriff Alexander or any other jail official was deliberately indifferent to Ford's need for protection.  As stated in the affidavit of Sheriff Alexander, the jail had systems and policies in place to keep inmates separated if there is a known threat.  Doc. 42, Exhibit 3, Alexander Affidavit, at ¶ 11.  In particular, Sheriff Alexander stated that "[i]t is the policy of the Jail that if an inmate reports a credible concern that another inmate is likely to engage in a violent attack on the inmate, the inmates will be separated to avert the violence.  The jail has a system in place that is designed to keep certain inmates separated due to the risk of violence and under other circumstances."  *Id.*  Again, Ford offers no evidence to show that these policies and procedures were a sham, or that they were so ineffective that the procedures themselves amount to deliberate indifference on the part of Sheriff Alexander.

Ford instead argues that Sheriff Alexander should have known that Cook was a danger to other inmates, including Ford, because he was a violent individual.  This argument is unpersuasive.  While there is always a general risk of violence at a jail or prison, that is not enough to establish knowledge of a substantial risk of harm.  *See, e.g., Shields, v. Dart*, 664 F.3d 178, 181 (7th Cir. 2008); *Dale v. Poston*, 548 F.3d 563, 568 (7th Cir. 2008) ("Prisons, after all, are dangerous places often full of people who have demonstrated aggression. And so, an inmate has no claim unless the official knows of and disregards an excessive risk to inmate health or

20

safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.").  Were that enough, prison and jail officials would, in effect, become strictly liable for all violence occurring within prison walls.  And that, of course, is not the law.  A plaintiff must show a tangible threat to his safety or well-being and that the defendants were subjectively aware of the risk but failed to take reasonable measures to prevent it.  Ford has failed to do so in this case.

Ford also suggests that Sheriff Alexander should have known that Cook would attack Ford because Cook believed that Ford had snitched on him with regard to the cigarette lighter. Ford essentially argues that Sheriff Alexander should have been aware of a risk of harm to Ford because Cook regarded Ford as a snitch.  This argument makes no sense on its face in the absence of evidence, and there is none, that Sheriff Alexander knew before the fight that Cook suspected Ford of snitching.  While not strictly applicable, because Ford does not allege that he in fact snitched on Cook, the Seventh Circuit addressed the inherent risk faced by snitches in prison in *Dale v. Poston*, 548 F.3d 563, 568 (7th Cir. 2008).  The plaintiff, a federal inmate, brought a *Bivens* action against several prison employees claiming that they violated the Eighth Amendment by failing to protect him from an attack by another inmate.  The plaintiff was serving time at a high-level security federal penitentiary after he pleaded guilty to drug charges. As part of a plea agreement, the plaintiff agreed to cooperate with the government and provide testimony against persons involved in the drug trade.  While he was at the prison, he provided testimony against another inmate who was also housed in the same unit as the plaintiff.  He was labeled a snitch by the other inmates.  He was subsequently attacked by another inmate in the prison yard.  The plaintiff argued that the defendants should be found to have been deliberately indifferent simply because he had been labeled a snitch by other inmates.  The Seventh Circuit rejected this argument, explaining:

21

Dale asks us to find deliberate indifference due to the inherent risks faced by snitches in prison; he would have Eighth Amendment liability every time an inmate known to be cooperating with authorities is attacked. That would be quite a stretch. Just because a correctional officer knows an inmate has been branded a snitch -- and it's common knowledge that snitches face unique risks in prison -- does not mean that an officer violates the Constitution if the inmate gets attacked. Each case must be examined individually, with particular focus on what the officer knew and how he responded.

*Id.* at 569-570.

Here, Ford was not actually a snitch.  He also never alerted jail officials that Cook may have believed him to be a snitch.  In his Supplemental Brief, where Ford clarifies his argument, he points to the incident report completed by Deputy Iselin, which shows that, <u>after</u> the attack, Cook informed Deputy Iselin that Ford had started the fight with Cook because Ford was mad that Cook had accused Ford of "dry snitching" on Cook for having the cigarette lighter. Although Cook may have believed Ford to be a snitch, there is no evidence that any jail official, before the fight, was aware of this belief or had any other knowledge that Cook had an animus against Ford.[14]  Put simply, there is no evidence that any jail official was actually aware of  facts from which an inference could be drawn that a substantial risk of harm exists, or that any jail official actually drew such an inference.  Thus, merely because Ford may have been labeled a snitch by Cook, without more, does not establish liability under Section 1983 for failure to protect.

---

[14] In his Supplemental Brief, Ford does not repeat an allegation that he made in his Reply Brief in support of his Motion for Summary Judgment.  There, Ford alleged that "the jail personell [sic] knew or  should have known this assault would take place, since whomever, spoke to Mr. Cook gave him knowledge that Mr. Jarritt R. Ford had spoken to the jail staff about problem with Mr. Cook."  Doc. 34, at p. 2.  This allegation is unclear and unsupported. However, it appears to be mere speculation on Ford's part that some unidentified person must have told Cook something that caused Cook to suspect Ford of being a snitch.  Even if such speculation had some basis in fact, it would not establish that jail staff either knew or should have known before the fight that Cook suspected Ford or was a danger to Ford.

In sum, Ford has provided no evidence that Sheriff Alexander was deliberately indifferent to Ford's safety and his need for protection.  Accordingly, Ford cannot establish a violation of the Eighth Amendment.[15]

### 2.    Qualified Immunity

Sheriff Alexander also contends that he is entitled to qualified immunity with regard to Ford's individual capacity claims.  Qualified immunity is an immunity from suit, not merely a defense to liability.  *Pearson v. Callahan,* 555 U.S. 223, 129 S.Ct. 808, 815, 172 L.Ed.2d 565 (2009) (citing *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)). To determine whether a defendant is entitled to qualified immunity, the court looks to the function performed by the actor, not the identity of the actor.  *Kalina v. Fletcher,* 522 U.S. 118, 127, 118 S.Ct. 502, 139 L.Ed.2d 471 (1997); *Buckley v. Fitzsimmons,* 509 U.S. 259, 269, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993); *Higgason v. Stephens,* 288 F.3d 868, 877-78 (6th Cir.2002); *Holloway v. Brush,* 220 F.3d 767, 774 (6th Cir.2000) (en banc).

Under the doctrine of qualified immunity, government officials performing discretionary functions are shielded from Section 1983 liability in their individual capacity "insofar as their conduct does not violate clearly established statutory or constitutional rights which a reasonable person would have known."  *Phillips v. Roane Cnty.,* 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)) (internal quotations omitted).  In determining whether a government official is shielded from civil liability due to qualified immunity, a reviewing court typically employs a two-step analysis: "(1)

---

[15] In claim three of Ford's original Complaint, he also alleges that his rights under the Fifth, Sixth, and Fourteenth Amendments were violated by the County Defendants.  Doc. 5, p. 7.  However, Ford never identifies which specific rights were violated.  Upon review of the pleadings and briefs, it is unclear what other rights, if any, would be implicated in this case.  It is not the Court's function to speculate as to the basis of a conclusory and undeveloped claim.  *See, e.g., McPherson v. Kelsey,* 125 F.3d 989, 995–996 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.") (citations omitted).  Because Ford has failed to develop those constitutional claims, he has waived them.

whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and (2) whether that right was clearly established."  *Estate of Carter v. City of Detroit*, 408 F.3d 305, 310–11 (6th Cir. 2005) (citing *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)).  "The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct."  *Saucier*, 533 U.S. at 205.

The burden is on the plaintiff to show that the defendants are not entitled to qualified immunity.  *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006) ("Once the qualified immunity defense is raised, the burden is on the plaintiff to demonstrate that the officials are not entitled to qualified immunity.").  A right is "clearly established" for qualified immunity purposes when the contours of the right are sufficiently clear, even if the specific action in question has never been held unlawful.  *See Sample v. Bailey*, 409 F.3d 689, 698 (6th Cir. 2005). The relevant inquiry is whether "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  *Saucier*, 533 U.S. at 202.

As set forth above, Ford has failed to establish that Sheriff Alexander violated his constitutional rights.  There is absolutely no evidence that Sheriff Alexander was present for, or personally involved in, the alleged failure to protect Ford from Cook.  There is also no evidence that Ford suffered any injury as a result of any order or directive issued by Sheriff Alexander, or that Sheriff Alexander otherwise encouraged or condoned the actions giving rise to Ford's claim. Sheriff Alexander is entitled to qualified immunity on Ford's failure to protect claim.  Therefore, for this alternative reason, the Court should grant summary judgment in favor of Sheriff Alexander.

### 3.      Unnamed Jail Officials

Ford has failed to name any other jail official as a defendant in this case or identify any other jail official who was personally responsible for the alleged deprivation of his constitutional rights, even though he had ample time to conduct discovery to identify and name such defendants.[16]  Because Ford has failed to identify and serve any other individual defendants in this case, to the extent that he has asserted any remaining claims under Section 1983 against individual defendants, such claims must fail.[17]  *See Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) ("To recover damages under § 1983, a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right."); *see also Pruitt v. Lewis,* No. 06–2867, 2007 WL 4293037 (W.D. Tenn. Dec. 6, 2007) (dismissing claims against unnamed defendants where the discovery deadline had passed and the plaintiff failed to use the discovery process to determine the names of the unidentified defendants).  Accordingly, the unnamed John and Jane Doe Defendants, who are presumably jail officials, should be dismissed from this case.

### 4.      Summit County - Municipal Liability

Ford also asserts claims under Section 1983 against Sheriff Alexander, in his official capacity, and Summit County, alleging that the County Defendants did not have an adequate policy for addressing the safety of inmates (Doc. 1, at pp. 5-6) and that the County Defendants failed to adequately train, staff, and/or supervise jail employees.  Doc. 1, p. 6.  As set forth above, claims against a local government official in his official capacity are treated as claims against the local government entity itself.  *Shorts v. Bartholomew,* 255 Fed. App'x. 46, 57 (6th

---

[16] This case has been pending for almost two years.  The discovery deadline expired on June 1, 2012.  Doc. 20.  Likewise, the deadline for service of process has long since passed.

[17] As part of his failure to protect claim, it appears that Ford contends that unnamed jail officials should not have left Cook in his cell after disciplining him.  Doc. 66.  It also appears that Ford is alleging that unnamed jail officials failed to protect him because they did not timely respond to the fight or to Ford's calls for medical help.  Doc. 1, at pp. 5-7; Doc. 66.  However, Ford has failed to identify the specific jail official or officials who were personally responsible for these alleged deprivations.  Because the discovery deadline had passed and Ford has failed to amend his Complaint to specifically identify these officials, these claims should be dismissed.

Cir. 2007). Thus, Ford's claims against Sheriff Alexander in his official capacity shall be treated as claims against Summit County.

Section 1983 does not permit a plaintiff to sue a local government entity on the theory of respondeat superior. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 692-94, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A plaintiff may only hold a local government entity liable under Section 1983 for the entity's own wrongdoing. *Id.* In other words, if an "action pursuant to official municipal policy of some nature caused a constitutional tort," then the municipality is liable as the wrongdoer. *Id.* at 691. "To succeed on a municipal liability claim, a plaintiff must establish that his or her constitutional rights were violated and that a policy or custom of the municipality was the 'moving force' behind the deprivation of the plaintiff's rights." *Miller v. Sanilac Cnty.*, 606 F.3d 240, 254–55 (6th Cir. 2010).

It is well established that, before a local government entity can be liable under *Monell,* a plaintiff must prove an underlying constitutional violation by a government employee. "A finding that [plaintiff] suffered an actual violation of his constitutional rights at the hands of the defendant officers... [is] a necessary prerequisite to a finding of liability against the municipal defendants." *Tinch v. City of Dayton*, No. 94–3436, 1996 WL 77445, at *3 (6th Cir.), *cert. denied*, 117 S.Ct. 168 (1996); *see also Bonilla v. Jaronczyk*, 354 Fed.App'x. 579 (2d Cir 2009) (finding that there was no basis to consider municipal liability because individual liability was a prerequisite for municipal liability under *Monell*); *D'Ambrosio v. Marino*, No. 1:11 CV 933, 2013 WL 256312 (N.D. Ohio Jan. 23, 2013) (noting that an underlying constitutional violation is a prerequisite to a finding of liability under *Monell*); *Dahm v. City of Miamisburg*, No. C–3–95–207, 1997 WL 1764770, at *13 (S.D. Ohio March 31 1997) ("It is axiomatic that in order to establish municipal liability, the plaintiff must first establish an underlying constitutional violation."). In this case, for the reasons set forth above, Ford has failed to establish an

underlying constitutional violation by Sheriff Alexander or any other unnamed jail official. Therefore, Summit County cannot be held liable under Section 1983 based on a *Monell* theory of liability.  Accordingly, the Court should grant summary judgment in favor of Summit County on Ford's Section 1983 claims.

> **5.      Discovery Sanctions – Waiver of Prosecution**

Finally, Ford argues that the Court should enter summary judgment in his favor as a discovery sanction because the County Defendants failed to produce a waiver of prosecution allegedly signed by Ford.  Doc. 28, at p. 6.  On August 10, 2012, Ford filed a motion captioned "Motion to Compel Discovery and Enforce Sanctions."  Doc. 32.  In that motion, Ford stated that the County Defendants failed to produce the waiver of prosecution and requested that the Court sanction the County Defendants for their failure to produce the document.  Doc. 32.  In response to the motion to compel, the County Defendants stated that they have produced all documents in their possession with regard to this case, including all documents in Ford's inmate file, all documents in his file from the jail infirmary, documents related to the incident that formed the basis for this action, and medical files held by Akron General Medical Center. Doc. 39. The County Defendants also stated that they attempted to locate the waiver of prosecution but failed to locate it.  Doc. 39.

On September 19, 2012, the undersigned denied Ford's motion to compel and to enforce sanctions.  In short, the undersigned found that the County Defendants had produced all of the documents in their possession and had made diligent efforts to locate the waiver of prosecution. The undersigned also noted that the failure to produce the waiver was not prejudicial to Ford because the waiver is not relevant to Ford's federal and state claims that his constitutional rights were violated by Defendants.  Because the undersigned denied Ford's motion to compel and to enforce sanctions, his renewed request for sanctions based on the failure of the County

Defendants to produce the waiver of prosecution is without merit.  To the extent that a recommendation is necessary for a discovery matter, the undersigned recommends that the Court deny Ford's request for discovery sanctions.

**C.      Ford's State Law Claims**

        In his Complaint and Amended Complaint, Ford asserts several state law claims against the County Defendants and Defendant Cook.  First, Ford asserts a claim against the County Defendants for dereliction of duty in violation of Ohio Rev. Code § 2921.44 (Doc. 1, p. 7 - claim three of original Complaint).  Second, Ford asserts a claim of "reckless disregard to a known condition under the Ohio Negligence Statute" (Doc. 5, p. 3 – claim five in amended complaint). Third, Ford asserts state law claims of assault and battery against Defendant Cook (Doc. 5, p. 3 - claim four in Amended Complaint).  It is not necessary to address the merits of these claims in this case.  Pursuant to 28 U.S.C. § 1367(c)(3), the district court has the discretion to dismiss claims over which it has supplemental jurisdiction when it has dismissed all claims over which it has original jurisdiction. *Dobbs–Weinstein v. Vanderbilt Univ.,* 185 F.3d 542, 546 (6th Cir. 1999).  The Sixth Circuit has recognized a general rule disfavoring a district court's exercise of pendent jurisdiction when federal question claims are dismissed before trial.  *See Gaff v. Federal Deposit Ins. Corp.,* 814 F.2d 311, 319 (6th Cir. 1987); *see also Wolotsky v. Huhn,* 960 F.2d 1331, 1338 (6th Cir. 1992) ("Where a district court exercises jurisdiction over state law claims solely by virtue of pendent jurisdiction and the federal claims are dismissed prior to trial, the state law claims should ordinarily be dismissed without reaching their merits.").  Accordingly, the undersigned recommends that the Court decline to exercise supplemental jurisdiction over Ford's state law claims and dismiss those claims without prejudice.

### IV.  Conclusion and Recommendation

It is unfortunate that Ford was assaulted and suffered severe injuries at the hands of another inmate.  However, not every jailhouse assault that results in injury involves a deprivation of constitutional rights.  Deliberate indifference -- the federal constitutional standard -- is a high bar for plaintiffs to hurdle.  Ford falls short of clearing that bar based on the undisputed facts of this case.  As a matter of law, the County Defendants were not deliberately indifferent to Ford's safety needs and Defendant Alexander is also entitled to qualified immunity.  Accordingly, the undersigned makes the following recommendations:

1. The motion for summary judgment filed by Plaintiff should be DENIED.  Doc. 28.

2. The motion for summary judgment filed by the Defendants Summit County, Ohio and Drew Alexander should be GRANTED (Doc. 42) and Plaintiff's federal claims should be dismissed with prejudice.

3. The Court should dismiss Plaintiff's claims against the unnamed John and Jane Doe Defendants without prejudice.

4. The Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims and should dismiss those claims without prejudice.

Dated: February 22, 2013

Kathleen B. Burke
United States Magistrate Judge

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); s*ee also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).